*Court of Common Pleas, Dauphin County, March 3d, 1862.*

### IN THE MATTER OF DENKEL'S ESTATE.

The claims of mechanics or materialmen take precedence from the commencement of the building against all other claims, and share ratably among themselves.

A mechanic or materialman need only show the person in possession of the property against which the lien was filed; the burden of proof then rests upon a party disputing the validity of the lien to disprove his title.

A mechanic's lien that only describes the property as a certain frame building, gives the size of the house, and the township and county in which it is situated, and also that the work was done in the erection of the said house and its *appurtenances*, is fatally defective.

Where sale of property has been made by the sheriff, and the proceeds brought into court for distribution, and referred to an auditor, each person claiming a lien is permitted to controvert the validity of all other liens. This should be done before the auditor, not by a motion to strike off the lien or by demurrer.

The claims of mechanics and materialmen are not evidence of a debt, but merely of a claim, and the amount must be made out by proof.

(Librandt et al. *v.* Eberly, 12 C. 347, distinguished.)

BY THE COURT.—Numerous exceptions have been filed to the auditor's report in this case, only one of which is in our opinion sustained.

The auditor has preferred the claims of the mechanics and materialmen to the judgment of Henry Shope *v.* John Denkel, entered on the 4th day of June, 1860, on a bond dated April 10th of the same year. The precise time the building was commenced, against which these liens are filed, is not stated; it is an important matter, susceptible of proof, and should have been established; but sufficient is shown to convince us that it was prior to the 4th of June, 1860, the date of Shope's judgment, and if so, those liens have the preference. All the mechanics' liens commence at the date of the first stroke of the axe or spade used in making the house, without regard to the time of their being filed, or of the doing of the work, or furnishing materials. The man who does

[In the matter of Denkel's Estate.]

the last of the painting or plumbing comes in *pari passu* with him who built the foundation wall. All take precedence from the commencement of the building against all other claims, and must share ratably amongst themselves. It seems that John Wagner's bill for carpenter work was made out and dated on the 2d day of June, 1860, and shows 32½ days' work done at the house before that time, whilst Edward Stover's bill of lumber furnished commences on the 25th of January, 1860, and terminates on the 29th day of May of the same year, both prior in time to Shope's judgment. It is said, however, that Denkel had not the fee simple in the land when this work was commenced, but Shope held the legal title—Denkel holding an article for its purchase—and the judgment was given for a balance of purchase-money. Although we have but little evidence of this fact in the auditor's report, yet it seems to have been conceded. That, however, gives no precedence to this over other claims, unless it appeared that the legal title was withheld until the day the judgment was entered, so as to make that and the delivery of the deed simultaneous acts. The burden of proof rested on Shope, first to show his article, and establish that the person in possession had but an equity, and next that he delivered the deed and entered the judgment on the same day. He seems to have taken it for granted that the mechanics and materialmen must prove title in Denkel, but we think that on showing him in possession of the land, and the building commenced under his direction, his title will be presumed to be good until something is established to shake it. Here were liens overruling Shope's judgment, and if he wished to establish anything peculiar, which would give him an interest antecedent to the entry of his judgment, the burden of proof rested on him.

The lien of Stover for materials, amounting to $160.83, with the legal interest thereon, is unquestionably regular, and was properly allowed by the auditor as the first lien; but that entered in favor of Wagner for his labor is defective, and must be stricken out of the claims. The paper filed contains no other description of the property against which the mechanic claims a lien than "that certain two-story frame building (house) situate in *Londonderry township, in the county of Dauphin*, being twenty-two by twenty-four feet deep, two stories high, and the lot or piece of ground and curtilage appurtenant to said building." This is insufficient in not giving some more definite description of the location of the property. There are, perhaps, more than one hundred dwelling-houses in that township to which this description would equally apply. What would be thought of a lien describing the building as a three-story brick house in a certain ward in the city of Philadelphia. Every one would pronounce it most vague and uncertain, furnishing no notice of the claim. It is quite as indefi-

[In the matter of Denkel's Estate.]

nite as that condemned in Washburn *v.* Russell (1 Barr, 499), which described the building as " a double saw-mill on the waters of the Clarion river, situated on the east side of the river, in Clarion county."

This, in our opinion, is not the only fatal defect. It is claimed that a lien exists for carpenter work done "for and about the erection and construction of said building and *appurtenances* within six months last past." These are almost the very words used in the case of Barclay's Appeal (1 Harris, 495), which the court decided was fatally defective. Chief Justice Gibson says, "an appurtenance may be a yard, an alley, a cistern, a conduit-pipe, an ice-house, a smoke-house, a privy, or stable, or other out-house distinct from the principal building mentioned in the written claim, and consequently not within the purview of the lien laws." This case is recognized as sound in Singerly *v.* Cawley (2 Casey, 248), where the lien was saved so far as regards that expression by treating it as surplusage, and a mere failure to strike out a portion of the printed description, the part in writing being correct.

But it is said that these formal objections to mechanics' liens must be raised by demurrer, on a motion to strike them off, and 12 Casey, 347, is cited for that position. That case came before the court on the plea of *payment,* which admits the claim to be good, and properly set forth in the *sci. fa.;* of course the party will not be permitted to question it against his own admission of record. But where a sale of property has been made by the sheriff, and the proceeds brought into court for distribution, and referred to an auditor, each person claiming a lien is permitted to controvert the validity of all other liens. Those filed by mechanics and materialmen are not even evidence of a *debt,* but only of a *claim,* the amount of which must be made out by the proof. Notice is given for all the parties in interest to come forward and be heard, and then for the first time have they an opportunity of making their objections. If the claim is not filed in proper form, it is rejected by the auditor, as not being a lien. If no debt is established, it is thrown out in like manner, and if allowed or rejected, the whole case comes before the court on exceptions. Such has been the settled practice of Pennsylvania, and we can see no advantage from changing it, but the reverse. If motions must be made in court to strike off the liens, the action of the auditor will have to be suspended until those motions are disposed of, and instead of having the whole subject brought up at once on the report, it will have to be considered at various times, as every creditor has a right to make his objection to the claim of every other creditor. This can rarely be done before the appointment of the auditor, as that takes place *ex parte,* on the sheriff bringing the money into court, and there is rarely any notice given of the intended application, certainly no notice ever

published, yet full notice is given to the auditor of the time of his action. In very many cases the lien creditors do not know that a sale is about to take place, or has taken place on a judgment, whilst the judgment creditors are unaware of the amount due on the mechanics' lien. When a *scire facias* issues, which does not occur one time in five, it is the proper course to require the defendant to plead the defect in the lien, and not take issue on the plea of non-assumpsit, and then set up that which might have avoided a trial. The principle applies solely to a contest between the parties to the record, whilst before the auditors it arises between those who have a common debtor, but no connection between the creditors. There are more than twenty cases reported in our books where the objection to the lien was raised before the auditor, and no inconvenience has hitherto been felt from that course of practice, nor would any benefit accrue from the one indicated, as in every case the respective creditors would apply to the court to strike off each other's claims; neither time, nor the sheriff's sale, could cure that which was radically defective, and neither debtor nor creditor could be considered as having a day in court until an attempt was made to enforce the lien by *scire facias*, or demand money on it arising from a sheriff's sale.

If the Supreme Court wishes to benefit the mechanic and materialmen, they should do it by overruling mere technical objections, such as we are obliged to sustain under the present decisions as to the house and *appurtenances*. But the want of some reasonable description of the premises is not of that character. It is a matter of grave substance, which might most injuriously affect purchasers, mortgagees, or judgment creditors.

The decision of the auditor appropriating a portion of the money to the claim of John Wagner, is set aside, and all of the money, after discharging the lien of Edward Stovers, is appropriated to the judgment of Henry Shope *v.* John Denkel, and with that correction the report is confirmed, and the money ordered to be paid out accordingly.